## THE MAYOR AND COMMON COUNCIL OF THE CITY OF AUBURN *vs.* SIMEON DRAPER.

Where a party is in the possession of money which he has received upon a sale by him as agent of the plaintiff, of bonds issued by the plaintiff, which money belongs to the plaintiff, such party is liable for the amount, in an action for money had and received, notwithstanding the issue and sale of the bonds was unauthorized.

Where the plaintiff, having a claim against the defendant, appointed H. & R. its agents to settle and arrange the same with the defendant, and R., without the concurrence of H., effected an arrangement with the defendant by which the latter turned out to R. certain real estate and securities in full satisfaction and discharge of the plaintiff's claim, and the plaintiff, on being informed of the arrangement, promptly repudiated the same, and directed the securities to be returned to the defendant; *Held,* that the plaintiff was not bound by the settlement made by R.

THIS action was tried at the circuit court held in the county of Cayuga, in October, 1855, before Mr. Justice T. R. STRONG. The complaint contained two counts or statements of causes of action. Upon the trial the first count was abandoned, the plaintiff relying upon the second; which was, that the defendant was indebted to the plaintiffs in the sum of $60,000,

for so much money had and received by the defendant to and for the use of the plaintiffs, on the 19th day of July, 1853, alleging the same to be due and unpaid, and claiming the said amount, with interest from the time stated, and alleging the neglect and refusal of the defendant to pay the same. It is unnecessary to state the defendant's answers, as no question arose upon them at the trial. The plaintiffs, at the trial, gave evidence tending to prove that in the month of July, 1853, the defendant received from the plaintiffs one hundred bonds of the city of Auburn, issued by said city, for $1000 each, payable in twenty years from date, with interest at the rate of *seven per cent per annum*, to be sold by the defendant for the said city; that the defendant sold the bonds for the sum of $106,000, net, and received the money for the use of the city of Auburn. That the defendant actually received $107,000, on the sale of the bonds by him, but it was agreed between the plaintiffs, acting by Thomas Y. How, their agent, he being mayor of the city of Auburn at the time, and the defendant, that the latter should retain to his own use all over *six per cent* premium which he might receive on the sale of the bonds, and retain the whole proceeds in his hands at the rate of *seven per cent per annum* for the use of the money, and pay over the same to the plaintiffs as follows : $15,000 in the same month of July and $12,000 per month thereafter, until the whole should be paid, with interest as aforesaid. That the bonds were all sold by the defendant to the United States Trust Company, and the purchase money received by him; and that he paid over to the plaintiffs, from time to time, in various sums, from and including July, 1853, to and including the third day of October of the same year, the sum of $51,000, which was all he had paid over. After the plaintiffs rested, the defendant's counsel moved for a nonsuit, on the following grounds : 1. That as the plaintiffs were a municipal corporation, it was necessary, to entitle them to recover, to prove that they had the power to issue and to sell the bonds which had been delivered to the defendant; and 2. To prove that they had the power to appoint an agent to sell and transfer the bonds; and as the plaintiffs had not proved their

power so to do, they were not entitled to recover; and 3. That if How was an agent appointed by the city to sell these bonds, that was a personal trust, which he could not delegate. The motion for a nonsuit was overruled, and the defendant's counsel excepted. On the part of the defendant, evidence was given tending to prove that he purchased the bonds in question directly of the agent of the plaintiffs, agreeing to pay for them at the times and in the manner above stated. The defendant also gave in evidence a resolution of the common council of the city of Auburn, passed at a regular meeting thereof, on the 8th day of December, 1853, appointing Thomas Y. How, jr., mayor, and R. F. Russell, an alderman and chairman of the finance committee, as their agents, with power to arrange with the defendant the claims of the city of Auburn against him. Under this resolution Russell, without the concurrence of How, effected an arrangement with the defendant by which the latter turned out to Russell for the plaintiffs certain real estate and securities, upon which Russell executed a receipt and agreement, dated February 1, 1854, which, after reciting the securities and real estate, was as follows: "These securities are received in full settlement and discharge of all claims the city of Auburn have against Mr. S. Draper, and this acknowledgment of the same is signed by me in virtue of the power conferred upon me by vote of the common council of Auburn; and I hereby agree to procure and forward to the said S. Draper the acceptance of the said securities in full discharge of the debt, from the common council of Auburn, under seal of the city.

For the mayor and common council of the city of Auburn.

R. F. RUSSELL,

Chairman Fin. Com."

The defendant gave in evidence an act of the legislature passed March 21, 1848, incorporating the city of Auburn; also an act passed July 10, 1851, to authorize the city of Auburn to borrow money to aid in constructing a rail road, &c. Also an act amendatory of the said act of July 10, 1851, passed April 2, 1852.

On the part of the plaintiffs it was shown that at a meeting

of the common council of the city of Auburn, held on the 20th of February, 1854, a resolution was adopted, "that Alderman Russell, chairman of the finance committee, be instructed to return to Mr. S. Draper the securities he offered, as payment of his debt to the city, and that the clerk notify Mr. Russell to inform Mr. Draper that his offered securities, in payment of the claim, are not accepted by the common council of the city." It was also shown that the securities mentioned were afterwards offered to the defendant, who refused to receive the same.

The judge, among other things, charged the jury, in substance, that if the defendant was the purchaser of these bonds from the plaintiffs, the latter was not entitled to recover, for the reason that there was not sufficient evidence to show that the plaintiffs were authorized to issue the said bonds. But if the defendant sold the bonds as agent or broker of the plaintiffs, and had received the money for them, he was liable for the amount unpaid, notwithstanding he was allowed by the agreement to retain the money and pay it over in monthly installments, as the same were all due before this action was commenced. To this charge the defendant's counsel excepted.

The jury found a verdict for the plaintiff for $63,973.60. The defendant now moves for a new trial.

*C. A. Seward,* for the defendant.

*Geo. Rathbun,* for the plaintiffs.

*By the Court,* WELLES, J. Assuming that the bonds of the city of Auburn were issued without authority of law, yet, if the defendant, as agent of the plaintiffs, sold and received the money for them, he is not at liberty to retain it to his own use. One of the principal questions at the trial was, whether the defendant was the purchaser of the bonds directly from the plaintiffs, or whether, in the transaction, he acted as the plaintiff's broker or agent, and as such received the money in question. The judge at the circuit instructed the jury, that in the former case he was not liable, but in the latter he was. The jury

could not have found for the plaintiff, under such instructions, without affirming the latter alternative. The verdict therefore settles the fact that the defendant received the money as agent of the plaintiffs, and, as such agent, holds it. The evidence was sufficient to warrant such finding; at least, enough appeared to justify the judge in submitting the question to them, and to render it improper for the court to disturb their verdict on that ground. It is therefore to be assumed as a fact established, that the defendant is in possession, or has received the proceeds, of the sale of the bonds, which proceeds belong to and is the money of the plaintiffs. By what rule of law, then, can he be excused from paying it to them? It is contended by his counsel, among other things, that as the issue and sale of the bonds was unauthorized, and the defendant was in possession of the fruits of the unlawful transaction, he, as between him and the plaintiffs, is in the better condition of the two, and that the law will not lend its aid to compel him to pay it over, but will, in such case, leave the parties where it finds them; and he invokes the advantage of the maxim, *potior est conditio possidentis.* The question may not be entirely free from difficulty. It is, as I think, the only serious one in the case. But we are of the opinion that the defendant's obligation is one degree removed from the illegality alleged, which consisted, if at all, in the unlawful issue and sale of the bonds; in that, the defendant did not act in his own name or behalf, but as the agent of the plaintiffs. He is not suing or setting up a claim for services in a business or transaction forbidden by law, or *contra bonos mores,* where the maxim *ex turpi causa, non oritur actio,* would apply; but he is found in possession of money belonging to the plaintiffs, which is the ultimate fruit of an illegal transaction, in which, however, he was not a party. When he, as the plaintiffs' agent, negotiated the sale of the bonds and received the money for them, if he disclosed to the purchaser the character in which he acted, he incurred, in the absence of any fraud on his part, no liability to such purchaser to refund the money received. If he did not disclose his agency it was his own fault. The presumption is, that such

disclosure was made, and it does not lie with him to deny it. To test the question, suppose the defendant, upon receiving the money, had committed it to a messenger or express company to carry to the plaintiffs; can it be be doubted that the messenger or express company would be liable to the plaintiffs, in case of refusal to pay over? It seems to me not; and yet it is difficult, if not impossible, upon principle, to distinguish the case supposed from the one before us. It is not for the sake of the defendant, or the person in possession, that the maxim *potior est, &c.* is applied; but it is where a party asks the assistance of the law to enforce an unlawful *executory* contract, that the law refuses its aid. Here, the sale of the bonds had become completely executed, and the money in the hands of the defendant as agent of the plaintiffs. The case of *Hamilton* v. *Kane,* (2 *Hall's Rep.* 526,) is in point, in support of the defendant's liability. The fact that in that case notes were taken from the defendant does not, in my judgment, vary the principle, or distinguish it from the present. It would not have strengthened this case for the plaintiffs, if the defendant Draper, upon receiving the money, had executed notes to the plaintiffs for it. The defense interposed, of an accord and satisfaction, entirely failed. The alleged negotiation and settlement by Russell was not binding upon the plaintiffs, it never having been ratified by them. Russell was only empowered to act in conjunction with How, who did not participate in any of the acts constituting the alleged settlement; and the plaintiffs, upon learning what the former had done, promptly repudiated his acts, and offered to return the securities which Russell had taken.

There were several subordinate questions raised and decided at the trial, which were also presented and discussed upon the argument, all of which, we think, were properly disposed of by the justice holding the circuit.

The motion for a new trial is denied, and judgment ordered for the plaintiffs upon the verdict.

[Monroe General Term, December 1, 1856. *T. R. Strong, Welles* and *Smith,* Justices.]